UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:22-CV-00010-RGJ

PRESTON HUNT                                                                            PLAINTIFF

V.

CITY OF MADISONVILLE, KENTUCKY                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Defendant City of Madisonville, Kentucky ("Madisonville" or "the city") moves for summary judgment. [DE 17]. Plaintiff Preston Hunt responded [DE 20], and Madisonville replied [DE 21]. This matter is ripe. For the reasons below, Madisonville's Motion, [DE 17], is **GRANTED**.

**BACKGROUND**

Hunt owns a plot of land located at 153 West Noel Avenue in Madisonville, Kentucky. [DE 20 at 1]. Until June 2021, that land contained a car wash. [DE 17-1 at 4]. Hunt operated the car wash from 1995 until 2017, when his father had a stroke. [DE 20 at 1]. Then, Hunt ceased operating the business so he could dedicate more time to his father's care. [*Id.* at 1–2]. While he intended to resume operating the car wash at some point, he only occasionally visited or inspected property between 2017 and 2021. [*Id.*; DE 20-3 at 8–9].

During that four-year period, Hunt evidently allowed the car wash to fall into disrepair. In March 2021, Madisonville building official Frank Wallace visited the car wash's location and inspected the premises in response to complaints from the car wash's neighbors. [DE 20-4 at 39]. Wallace found the property seemingly "abandoned" and in "disarray." [*Id.* at 40]. He observed a rotting ceiling, large cracks running down the entire height of the walls, and piles of debris. [*Id.* at 39–42, 55]. He noticed that the walls were just freestanding blocks of concrete with no rebar or

1

other stabilizing material inside them to hold them upright. [*Id.* at 54]. He also observed that the car wash's foundation was eroding and that the building's runoff basins did not prevent car metals and oil from leaking into Madisonville's sewer system. [*Id.* at 49–50, 70–71]. Wallace also noted that people were likely congregating on the vacant property, as there was graffiti and litter all over. [*Id.* at 40–41]. He concluded that if and when the building collapsed, it would likely fall on top of someone. [*Id.* at 62].

Due to Wallace's findings, Madisonville condemned the car wash. [DE 20 at 2]. On March 30, to notify Hunt of the city's decision, Wallace placed a condemnation notice onto the car wash along with a letter explaining Madisonville's decision. [DE 17-10; DE 17-11; DE 17-12]. The condemnation notice stated:

**WARNING**
**CONDEMNED**
**DO NOT ENTER**
Under the jurisdiction of the Building Official of the City of Madisonville this
building is unsafe for
**OCCUPANCY**
Restricted entry by permission of the Building Officials office only
Please Contact Frank Wallace
Building Official
City of Madisonville
270-824-2196

[DE 17-10]. And the letter stated:

> The property listed above is in violation of the 2012 International Property
> Maintenance Code. The structure is unsafe for occupancy and **Condemned** at this
> time. Be advised that you have thirty (30) days to submit your plans for the
> renovation and repairs needed to bring this property up to code.

[DE 17-11]. Madisonville also mailed the letter to Hunt's residential address, 625 Balls Hill Road in Nebo, Kentucky. [DE 20-4 at 51]. Hunt claims he did not receive the letter, [DE 20 at 2], but he does not dispute that the city mailed it to his permanent address and that it was never returned to

the city as undeliverable. [DE 20-3 at 6–7; DE 20-4 at 52–53]. He also does not dispute that the notice and letter were clearly visible outside the car wash. [*See* DE 17-12].

Hunt never sent renovation plans or any other communications to Madisonville. [DE 20-3 at 10]. He also never appealed the condemnation decision to the city attorney or asked the city to appoint an appeals board, which he could have done had he seen the condemnation notice and objected to it. [DE 20-4 at 34–35]. After receiving nothing but silence from Hunt for over two months—double the time it gave him to respond—Madisonville demolished the car wash on or about June 9, 2021. [DE 17-1 at 4]. Hunt only found out about the demolition when he drove by the property a few days later and saw the car wash was no longer there.[1] [DE 20-3 at 5]. Early the next year, Hunt filed a 42 U.S.C. § 1983 claim against Madisonville in this Court, claiming the car wash's demolition was an unlawful taking under the Fifth Amendment, violated his due process rights under the Fourteenth Amendment, and broke multiple Kentucky state laws. [DE 1].

## STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could

---

[1] Hunt believes he drove by the property the first week of June, which conflicts with Madisonville's claim that it demolished the car wash on June 9. [DE 20-3 at 5]. Still, it is undisputed that the car wash was not demolished until June, at least two months after the condemnation notice was posted.

find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855, 1997 WL 640116, at *4 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131–32 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

## DISCUSSION

### A. Procedural Due Process

To make a procedural due process claim, a party must establish (1) that he has a life, liberty, or property interest protected by the due process clause, (2) that he was deprived of this protected interest, and (3) that the government did not afford him adequate procedural rights prior to depriving him of his protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). If the government deprives a person of a protected interest, it must "provide [the] person with notice and an opportunity to be heard before" the deprivation occurs. *Warren v. City of Athens*, 411 F.3d

697, 708 (6th Cir. 2005). It is uncontested that Madisonville deprived Hunt of a protected property interest when it demolished the car wash. The issue is whether the city afforded him due process before it did so.

      1.  <u>Notice</u>

The government must supply notice through means that "one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). "The Constitution . . . judges the adequacy of notice from the perspective of the sender, not the recipient." *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013). Generally, mailing notice to a person's home address satisfies due process. *Jones v. Flowers*, 547 U.S. 220, 234 (2006). Further, "posting notice on real property is a singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings against him." *Id.* at 236 (quoting *Greene v. Lindsey*, 456 U.S. 444, 452–53 (1982)) (internal quotation marks omitted). "[A]ctual notice is not required." *Keene Grp. v. City of Cincinnati*, 998 F.3d 306, 311 (6th Cir. 2021). A lack of due diligence by the notice's intended recipient will not negate otherwise adequate notice. *See Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005). Unless the government had direct knowledge—such as by its mailed notice being returned as undeliverable—that the intended recipient did not receive its notice, *see Jones*, 547 U.S. at 235, the government is not obligated to make any additional efforts to ensure the recipient saw the notice it sent. In *Davet v. City of Cleveland*, a city posted a condemnation notice on a property owner's building warning him that it would be demolished if ordinance violations were not corrected by the next day. *Davet v. City of Cleveland*, 456 F.3d 549, 551 (6th Cir. 2006). The Sixth Circuit held that the posting gave the owner "ample notice" of the city's decision. *Id.* at 552.

The notice must contain enough information about the government's planned action "to excite attention and put the party on his guard and call for inquiry." *Yang v. City of Wyoming*, 793 F.3d 599, 605 (6th Cir. 2015) (quoting *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1203 (9th Cir. 2008)). If a person receives such notice, he is charged with "notice of everything to which such inquiry may have led." *Id.* So, a property owner is charged with knowledge that his building will be demolished even if the notice does not explicitly say so if he would have found out about the planned demolition had he made the inquiry the notice called for. *Cf. id.*

The *Yang* court held that property owners were charged with adequate notice of the reasons why their building was condemned because they received notice that there would be a hearing about their property, and they could have learned all the information they needed at the hearing. *Id.* at 604. The court also said, in dicta, that a letter instructing the owners to call the city to learn why it planned to demolish their building would have been sufficient, as well. *Id.* at 605. Further, courts have consistently held that a condemnation order provides the property owner with adequate notice that a building could be demolished even if it does not explicitly state that the government plans to demolish it. *See, e.g.*, *Keene Grp. v. City of Cincinnati*, 998 F.3d 306, 312–13 (6th Cir. 2021); *Hill v. City of Jackson*, 751 F. App'x 772, 773–776 (6th Cir. 2018) (merely informing owner that structure was condemned and that there would be a hearing); *Roberts v. Girder*, 237 F. Supp. 3d 548, 552 (E.D. Ky. 2017) (sending a letter that merely stated a hearing would be held).

In *Keene*, for instance, the court held that mere knowledge that condemnation proceedings were ongoing was adequate notice that the building would be demolished if its issues were not abated, even though the city did not specifically tell the owner of its planned demolition. *Keene*, 998 F.3d at 312–13. "The fact that Plaintiff was unaware of the demolition order itself was the direct result of its own failure to take advantage of its 'opportunity to present [its] objections,' and

not a deprivation of due process." *Id.* at 313 (quoting *Mullane*, 339 U.S. at 314) (alteration in original).

Madisonville supplied Hunt with enough notice to satisfy due process. The city both posted its notice and letter on the car wash and mailed the letter to Hunt's permanent address. [DE 17-12; DE 20-4 at 51]. Even if the city knew that Hunt did not receive the letter (and there is no evidence that it did), it would not matter; the postings alone gave Hunt constructive notice that the car wash was condemned. *See Jones*, 547 U.S. at 236; *Davet*, 456 F.3d at 551. Further, the content of Madisonville's notice was adequate to notify Hunt that the car wash could be demolished. Madisonville told Hunt that the car wash was "condemned" and "unsafe for occupancy," and he had thirty days to submit repair plans. [DE 17-10; DE 17-11]. These words were enough "to excite attention and put [Hunt] on his guard and call for inquiry." *Yang*, 793 F.3d at 605. Indeed, Madisonville invited Hunt to inquire about the condemnation order by telling him to "please call Frank Wallace" and giving him the phone number. [DE 17-10]. Hunt is charged with "notice of everything to which such inquiry may have led," *Yang*, 793 F.3d at 605, and had Hunt called Wallace, he almost certainly would have learned that the city would demolish the car wash if he did not remedy its safety issues. As in *Yang*, where the owners were charged with notice of everything they would have learned had they attended the hearing, Hunt is charged with notice of everything he would have learned had he called Wallace. *See id.* at 604.

Hunt argues that Madisonville's notice was inadequate because "merely mail[ing] the Plaintiff a letter" was not enough to give Hunt notice that his car wash would be demolished, as "the circumstances of this case require more than a first class mail attempt." [DE 20 at 10]. But the city did *not* merely mail Hunt a letter. Hunt ignores the fact that Madisonville also posted its condemnation notice and letter on the car wash in plain view. [DE 17-12]. Again, "posting notice

7

on real property is a singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings against him." *Jones*, 547 U.S. at 236. Even if the city had not mailed Hunt anything, the posting alone gave Hunt constitutionally adequate notice.

Hunt also argues that Madisonville was required to specifically state that it would demolish the building if Hunt did not submit repair plans within thirty days of the city's posting. [*See* DE 20 at 8]. He analogizes this case to *Jones*, where the Supreme Court held that a state government's failure to notify a homeowner that his house would be sold for failure to pay taxes violated the due process clause. *See Jones*, 547 U.S. at 229–30. The owner had inquiry notice that he owed taxes on the house, but the Court said that was not equivalent to knowing that a tax sale was imminent even though it is "common knowledge that property may become subject to government taking when taxes are not paid." *Id.* at 232–33 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983)). Hunt argues that, similarly, although it may be common knowledge that condemned buildings will likely be demolished, notice that his building was condemned was not equivalent to notifying him that if would be torn down. [DE 20 at 10]. But the Sixth Circuit rejected a similar argument in *Keene*, stating notice "that the property was the subject of on-going condemnation proceedings" is "equivalent to notice that a tax sale is pending." *Keene*, 998 F.3d at 312–13 (quoting *Jones*, 547 U.S. at 232–33). The key difference between this case and *Jones* is that Hunt did not just have inquiry notice of the condemnation; he had constructive notice of the condemnation and inquiry notice of the *demolition itself*. If Hunt had followed the posted notice's instructions and called Wallace, he would have received actual notice that the city would demolish the car wash if he did not make the necessary repairs. *See Yang*, 793 F.3d at 605. "The fact that [Hunt] was unaware of the demolition order [] was a direct result of [his] own failure to take

8

advantage of [his] opportunity to present objections" by following up with Wallace. *Keene*, 998 F.3d at 313.

Finally, Hunt argues that the city's supplied notice was insufficient because it violated its own ordinances. But "the question regarding 'what process is due' is not answered by state law or local ordinances but by constitutional benchmarks." *Chandler v. Village of Chagrin Falls*, 296 F. App'x 463, 471 (6th Cir. 2008) (citation omitted). "Failure . . . to comply with state law does not [] automatically translate into a deprivation of procedural due process[.]" *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) (citation omitted). It does not matter whether Madisonville violated its ordinances because, as explained above, the notice it gave Hunt was more than enough to satisfy the Constitution.

## 2. Opportunity to Be Heard

The opportunity to be heard must be "appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The one whose rights are being deprived must receive an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citation and internal quotations omitted). In a property case, unless there is an emergency, the hearing must be held before the owner is deprived of his property interest. *Fitzpatrick v. City of Dearborn Heights*, 181 F.3d 100, 1999 WL 357756, at *2 (6th Cir. 1999) (unpublished table decision). But the hearing need not rise to the level of "a full, adversarial evidentiary hearing." *Loudermill*, 470 U.S. at 545. Rather, the hearing's necessary level of formality is determined *ad hoc* based on the levels of the competing interests at stake. *See Mathews*, 424 U.S. at 334 (citations omitted). Courts balance 1) the private interest affected, 2) the risk of erroneous deprivation of the interest, 3) the value of any additional procedural safeguards, and 4) the government's interests. *Id.* at 335.

Madisonville offered Hunt enough process to protect his rights. The city specifically invited Hunt to call Wallace to discuss the condemnation decision. [DE 17-10]. Wallace would have told Hunt the reasons for the condemnation, and if Hunt believed that anything Wallace said was incorrect, he could have corrected him. If Hunt still objected to the city's plan, he could have appealed its decision to the city attorney or asked Madisonville to appoint an appeals board, [DE 20-4 at 34–35], giving Hunt at least two chances to be heard before his car wash was demolished. This process satisfies the due process clause, especially because the *Mathews* factors weigh in the city's favor. While Hunt's interest in keeping his car wash was strong, the city's interest in keeping its infrastructure safe and protecting the citizens that congregated around the building was just as strong, if not stronger. *See Williams v. City of Stanford*, 533 F. Supp. 3d 512, 530 (E.D. Ky. 2021) (recognizing that a municipality "has an interest in maintaining safe dwelling places and protecting the interests of the public in general"). Further, Madisonville's procedures gave Hunt multiple opportunities to show that the car wash was not dangerous and did not need to be demolished, so the risk of an erroneous deprivation was low. *See Mathews*, 424 U.S. at 335. Finally, there was little value in additional procedures. The existing procedures were already enough for the city to get Hunt's full side of the story and consider all the facts before rendering a final decision. *See Barry v. Barchi*, 443 U.S. 55, 65 (1979) (no due process violation when horse trainer whose license was suspended "was given more than one opportunity to present his side of the story"). Moreover, the city's evidence that the car wash was dangerous is so strong that it likely would have demolished it even if its pre-deprivation procedures were as formal as federal court proceedings. [*See* DE 17 exhibits; DE 20-4 at 33, 54, 42-43, 49–50, 66–67].

Hunt argues that the city's procedures could not have been adequate because the city did not have an appeals board already set up, so "there was and still is no mechanism in place to

conduct a hearing." [DE 20 at 11]. The city explained that it gets appeals so infrequently that it would not make sense to always have an appeals board ready, and the mayor would have appointed a board if Hunt had filed an appeal. [DE 17-1 at 4, 10 n. 1]. Hunt claims that the city would not have done so. [DE 20 at 5 n.1]. But because Hunt did not file an appeal, there is no way of knowing whether the city's appeals process would be as it claimed. Had Hunt appealed the city's decision, and the city still did not set up an appeals board, perhaps Hunt may have had a case. But Hunt's mere speculation that the city's process would have been inadequate had he attempted to avail himself of it is not enough to survive summary judgment. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, [the] Plaintiff cannot rely on conjecture or conclusory accusations.").

Hunt also argues that he could not have appealed an adverse decision to the city attorney, Joe Evans, because Evans was also his father's attorney, and "clearly that would be a conflict of interest." [DE 20 at 12 n. 9]. The response brief implies that Evans prepared Hunt's father's will, and that Hunt was driving to Evans's office when he saw that the car wash was gone. [*See* DE 20 at 3, 12]. But Hunt's deposition testimony suggests that is not the case. Hunt testified that the only time he met Evans was when Evans represented Hunt's father in a case against a coal mining company. "The coal mines took my dad's coal out from under his ground. . . . He wrote them a letter but nothing ever got done about it." [DE 20-3 at 5]. It is not at all clear how Evans's representation of Hunt's father in an unrelated case—long before the events of this one—that Hunt himself had no interest in creates a conflict of interest. Hunt does not give the Court any information on the nature of Evans's representation of Hunt's father beyond the brief deposition snippet, nor does he cite to any ethical rule on conflicts of interest. As a result, the Court has no basis for deciding that appealing an adverse decision on the car wash to Evans was untenable.

11

B. *Substantive Due Process*

Substantive due process ensures a person is not subject to arbitrary or capricious governmental action. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) (citation omitted). The Sixth Circuit "has recognized two types of substantive due process violations: (1) official acts that are unreasonable and arbitrary and may not take place no matter what procedural protections accompany them, and (2) official conduct that shocks the conscience." *See Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (citations and internal quotation marks omitted). Hunt submits that Madisonville's conduct "shocks the conscience." [DN 20 at 12]. But to shock the conscience, the government's conduct must be "so shocking as to shake the foundations of this country." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012). "[N]o court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety." *Harris*, 20 F.3d at 1405. Indeed, *Harris* held there was no substantive due process violation even when city authorities demolished a building just five hours after declaring it to be unsafe and attempted to notify the owner with one, unanswered phone call. *Id.* at 1398, 1405. If that act does not shock the conscience, then neither does demolishing a building over two months after condemning it and posting the condemnation order on his building in plain view.

C. *Takings Clause*

"When a government commits a taking for public use, it does so under its civil, eminent domain powers." *Ostipow v. Federspiel*, 824 F. App'x 336, 341 (6th Cir. 2020). "When it does so, the government owes the property owners compensation for the land it took." *Id.* But "compensation is not mandated when the state legitimately exercises police power to abate a

property nuisance." *Embassy Realty Invs., Inc. v. City of Cleveland*, 572 F. App'x 339, 344 (6th Cir. 2020) (citing *Davet,* 456 F.3d at 553). Here, it cannot be seriously argued that Madisonville took the car wash for a public purpose; it acted pursuant to its police power to remove what it believed to be a dangerous structure. Hunt argues that the structure was not dangerous, [DE 20 at 13], but that is irrelevant. All claims "emanating from the use of police power are excluded from review under the Takings Clause." *Ostipow*, 824 F. App'x at 342. Finally, Hunt's comparison to *Embassy Realty*'s dicta that "[i]t well may be that the sudden demolition of a structure pursuant to an eleven-year old order would constitute an unconstitutional taking" is inapposite. *Embassy Realty*, 572 F. App'x at 344–45; [DE 20 at 14]. This is not the type of case that *Embassy Realty* conceived of, where a city condemned a property, sat on a demolition order for years, then suddenly demolished the building without warning the owner that it was finally carrying out a decade-old decision. *See Embassy Realty*, 572 F. App'x at 344–45. Madisonville demolished the car wash barely two months after it condemned it and adequately tried to notify Hunt of that decision.

### D. The Court Declines to Decide Hunt's State-Law Claims

In addition to alleging federal constitutional violations under § 1983, Hunt makes multiple claims arising under Kentucky state law. Under 28 U.S.C. § 1367(c)(3), however, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having determined that the federal claims over which this Court has jurisdiction should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See United Mine Workers*, 383 U.S. at 726. Consequently, the state-law claims will be dismissed without prejudice.

## CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Madisonville's Motion for Summary Judgment, [DE 17], is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

July 24, 2023

cc:     Counsel of record